1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

ROBERT W. SCHOFILED,

11                  Plaintiff,

12          v.

13

CAROLYN W. COLVIN, Acting
14  Commissioner of the Social Security
Administration,
15
                  Defendant.
16

CASE NO. 13cv5228-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17          This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18  Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19  Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

20  States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos.

21  14, 18, 19).

22          After considering and reviewing the record, the Court finds that the ALJ provided

23
24  clear and convincing reasons for failing to credit fully plaintiff's testimony, and provided

specific and legitimate reasons for crediting medical opinions from non-examining doctors over the opinions of examining and treating sources. The ALJ included a thorough discussion of the relevant medical evidence and noted inconsistencies in plaintiff's reports, as well as his behavior, as noted by medical sources.  For instance, even though plaintiff claims to have passed out 20 times, the ALJ's conclusion that there was only one isolated incident documented in the medical records led theALJ properly to conclude that this was not a limitation on plaintiff's ability to work.

Therefore, this matter shall be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, ROBERT W. SCHOFIELD, was born in 1961 and was 49 years old on the alleged date of disability onset of July 27, 2009 (*see* Tr. 249, 255). Plaintiff completed high school and 2 years of college (Tr. 85).  Plaintiff has worked as a parts driver, janitor, security guard and woodworker apprentice (Tr. 101).  Plaintiff was last employed as a security guard and has not worked since he passed out on the job (Tr. 86).

Plaintiff has at least the severe impairments of "lumbosacral disc abnormalities with radiculopathy and nerve impingement, vertigo, pain syndrome, cervical spondylosis, emphysema, and syncopal episodes (20 CFR 404.1520(c) and 416.920(c))" (Tr. 29).

At the time of the hearing, plaintiff was living alone in a motor home on the property of a friend (Tr. 93, 97).

<u>PROCEDURAL HISTORY</u>

On September 10, 2009, plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 249-254, 255-58). The applications were denied initially and following reconsideration (Tr. 117-42, 143-169). Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on March 27, 2012 (*see* Tr. 79-116). On April 4, 2012, the ALJ issued a written decision in which he concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 24-48).

On March 2, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-4). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in March 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 2, 2013 (*see* ECF Nos. 10, 11, 12).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Did the ALJ err in the RFC determination by failing to consider properly the limitations caused both by conditions found severe by the ALJ, as well as the limitations caused by conditions that have a functional impact even if not deemed severe, and by failing to consider properly the opinions by treating sources (2) Did the ALJ err by failing to consider the impact of chronic pain on plaintiff's ability to function; and, (3) Did the ALJ err by

failing to include all relevant functional limitation in the hypothetical question asked by the ALJ on which the steps 4 and 5 findings were made (*see* ECF No. 14, p. 1).

<u>STANDARD OF REVIEW</u>

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009).

DISCUSSION

1. **Did the ALJ err in the RFC determination by failing to consider properly the opinions by treating sources?**

    a. **Dr. Thomas Siler, M.D. , treating physician.**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999)).   If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the

ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Here, the ALJ gave "less weight" to the opinions of Dr. Siler, whose opinions were contradicted by, for example, the opinions of Dr. Robert Hoskins (*see, e.g.*, Tr. 165-67; *see also* Tr. 40). The ALJ found that Dr. Siler's April, 2010 opinion that plaintiff was limited to sedentary work was contradicted by Dr. Siler's observations following examination on that same date that plaintiff's examination of systems all were within normal limits, including cardo-vascular, pulmonary, abdomen, back, neurological and gait and station (*see* Tr. 39, 735, 736). The ALJ found that Dr. Siler's opinion that

plaintiff was limited to sedentary work also was "inconsistent with Dr. Siler's other

opinions elsewhere" (*see* Tr. 39-40). As noted by the ALJ:

> Between May and June 2010, Dr. Siler also opined that the claimant's
> condition was stable and quantified the claimant's limitations as follows:
> able to stand for eight hours in an 8-hour workday; sit for eight hours in
> an 8-hour workday; and lift thirty pounds occasionally and lift ten
> pounds frequently. In June of 2010 he again opined the claimant was
> limited to sedentary work. However, this time, unlike in April, Dr. Siler
> opined that PVC provided no work-related limitation for the claimant,
> while in April he had indicated it provided a moderate limitation. Again,
> all body systems were noted as within normal limits.

(Tr. 40 (*citing* Tr. 750)).

Based on a review of the relevant record, the Court concludes that the ALJ's

findings are supported by substantial evidence in the record as a whole. In April, 2010,

Dr. Siler opined that plaintiff was limited to sedentary work (*see* Tr. 735). However, in

May, 2010, Dr. Siler opined that plaintiff could stand for eight hours in an 8-hour

workday (*see* Tr. 750). Similarly demonstrating inconsistency is Dr. Siler's report in

September, 2010 that plaintiff could stand only for four hours in an 8-hour workday (*see*

Tr. 730). The ALJ's finding of "inconsistencies and apparent overstatement of limitation

by Dr. Siler" is based on substantial evidence in the record as a whole (*see* Tr. 40).

### b.  Mr. Leonard Puett, PA-C, lay "other medical" source

The ALJ discussed the lay opinion from Mr. Puett (*see* Tr. 40). Mr. Puett opined

that plaintiff suffered from marked limitations from his near syncope and chronic back

pain (*see* Tr. 1441). Plaintiff complains that the ALJ should not have rejected the opinion

of Mr. Pruett simply because Mr. Puett is not an acceptable medical source (*see* ECF No.

14, p. 12). The Court agrees that lay opinions should not be rejected on such basis,

however, plaintiff fails to address the other reasons offered by the ALJ for his failure to credit fully the lay opinion from Mr. Puett. The ALJ also gave little weight to Mr. Puett's opinion "because the overall medical evidence, including Mr. Puett's own treatment notes indicating improvement at this time, does not support Mr. Puett's findings as to severity rating or work level" (*see* Tr. 40). The ALJ also relied on a finding that "even the claimant's own reported daily activities exceed him being severely limited" (*see id.*).

Although an ALJ must discuss lay evidence, such evidence may be rejected properly when germane reasons are provided for doing so. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). The ALJ provided germane reasons here.

**2.   Did the ALJ err in the RFC determination by failing to consider properly the limitations caused by conditions that have a functional impact even if not deemed severe?**

Plaintiff complains that the ALJ failed to accommodate his mental difficulties due to distractability and his difficulties maintaining attention and concentration, as found by Dr. Michelle Zipperman, M.D. (*see* Opening Brief, ECF No. 14, pp. 8-9). Plaintiff complains about the ALJ's finding that "even if the claimant's mood disorder causes some limitations, the jobs identified by the vocational expert were unskilled" (*see* Opening Brief, ECF No. 14, p. 8). As noted by defendant, "All five of the jobs the ALJ identified at step five were unskilled, requiring "little or no judgement to do simple duties that can be learned on the job in a short period of time" (Response, ECF No. 18, p. 6 (*quoting* Tr. 42) (*citing* 20 C.F.R. §§ 404.1568(a), 416.968(a)).

In addition, regarding Dr. Zipperman's opinion, the Court notes that she opined that plaintiff's ability to perform simple and repetitive tasks was good; his ability to

accept instructions from supervisors was good; but his ability to perform detailed and complex tasks was fair and limited by his distractability, which also limited his ability to peform work activities on a consistent basis without special or additional instruction, which Dr. Zipperman opined was fair (*see* Tr. 1071-72). She rated plaintiff's global assessment of functioning at 65 (*see* Tr. 1071). She also opined specifically that plaintiff was "able to concentrate sufficiently to perform a three-step command" (*see id.*).

The ALJ gave great weight to the opinion of Dr. Zipperman (*see* Tr. 31) and found that plaintiff's medically determinable mental impairment of mood disorder was not a severe impairment as it did not meet the durational requirement of twelve months (*see* Tr. 30). Importantly, Dr. Zipperman indicated the following in her opinion: "However, I believe his primary limitations in work functionality are due to medical problems. The likelihood of him recovering from his major mental disorder in the next 12 months with treatment is good" (Tr. 1071).

The Court concludes that the ALJ's assessment of Dr. Zipperman is without harmful legal error and is supported by substantial evidence in the record as a whole. His reliance on her opinion to support his finding that plaintiff's mental impairments did not cause limitations for more than twelve months is supported by substantial evidence in the record as a whole. In addition, regarding plaintiff's allegations of distractability and difficulties maintaining attention and concentration, the Court notes the following discussion by the ALJ in his written decision:

> Other inconsistent statements also weaken the claimant's credibility. He
> testified that due to drowsiness from medication he could not sit very
> long and that he had a short attention span or was deficit (sic) in short-

term memory. However, psychological test results that reflected intact remote memory and good immediate and recent memory are inconsistent with his claim. . . . Also, he testified that he is able to play slot machines on the computer for five hours per day and prior to taking "heavy medication," he played eight hours per day. This is inconsistent with his claims and indicates that he is able to muster the attention span for activities that interest him.

(Tr. 38 (*citing* Tr. 1064-72)).

For the reasons stated, and based on the relevant record, the Court finds no error in the ALJ's assessment of Dr. Zipperman's opinion or his assessment of plaintiff's alleged limitations with respect to distractability and maintaining attention and concentration.

**3. Did the ALJ err in the RFC determination by failing to consider properly the limitations caused by conditions found severe by the ALJ, specifically, plaintiff's limitations from vertigo and syncopal episodes?**

The ALJ found that plaintiff's vertigo and syncompal episodes were severe impairments (*see* Tr. 29). Simply because the ALJ found that these were severe impairments does not require him to include limitations into plaintiff's residual functional capacity ("RFC") as a result of the severe impairments. The step-two determination of whether or not a severe impairment exists is merely a threshold determination, raising potentially only a "prima facie case of a disability." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) (*citing Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

Similarly, plaintiff appears to argue that simply the presence of a diagnosis of sycopal episodes requires accommodation into the individual's RFC, however, an impairment must be documented to result in specific functional limitations in order to require such accommodation. Here, plaintiff points to diagnoses of vertigo and syncope

and argues in general that "A person prone to passing out at unexpected times and frequency would not likely be able to work" (*see* Opening Brief, ECF No. 14, p. 7). Although plaintiff reported passing out at work and was diagnosed has having suffered from a syncopal episode, plaintiff did not cite to the Court an opinion from an acceptable medical source that plaintiff is prone to experiencing such events regularly, or in the future. A diagnosis of syncope indicates that plaintiff suffered from an episode of loss of consciousness. Although the ALJ may have committed harmless error in noting a lack of a diagnosis, a diagnosis alone is insufficient to demonstrate ongoing limitations as a result of any particular diagnosis. Plaintiff has not directed the Court to a medical opinion that plaintiff suffered from a medical impairment that likely would result in any future syncopal episodes. Although plaintiff indicates that "it was noted that [he] had 20 syncopal episodes" between July, 2009 and February, 2010, the treatment record contains only plaintiff's report of these episodes (*see* Tr. 565). The ALJ failed to credit fully plaintiff's credibility and allegations, a finding based on substantial evidence in the record and without harmful error, *see infra*, section 4.

In support of his argument regarding error in the evaluation of his vertigo and syncopal episodes, plaintiff cites the record from Ms. Laurie Steward, who opined that plaintiff suffered from markedly severe limitations due to near syncope (*see* Reply Brief, ECF No. 19, pp. 2-3; Tr. 338). However, the ALJ included the following in his written discussion regarding the opinion of Ms. Steward:

> Laure Steward, no credentials given, completed a physical evaluation for DSHS in October 2009. She diagnosed near syncope and superior mesenteric artery syndrome or chronic pain; and rated them as marked

and moderate, respectively. She also opined that he was capable of only sedentary work. This opinion is given no weight because Ms. Steward provided no credentials nor did she indicate where she worked or signed the evaluation, nor did she indicate the basis of her knowledge. It is not apparent she is an acceptable medial source, or even a medical source. Further, the claimant testified that he did not remember the identity of Ms. Steward either.

(Tr. 39 (*internally citing* Tr. 338)).

Although plaintiff complains about some of the reasons provided by the ALJ for his failure to credit fully Ms. Steward's opinions, the ALJ's finding that Ms. Steward did not indicate the basis of her knowledge is a finding based on substantial evidence in the record as a whole. Although an ALJ must discuss lay evidence, such evidence may be rejected properly when germane reasons are provided for doing so. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Here, the Court finds no harmful error.

4. **Did the ALJ err by failing to consider the impact of chronic pain on plaintiff's ability to function**?

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ

may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistencies in testimony regarding symptoms, and may also consider a claimant's daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

The determination of whether or not to accept a claimant's testimony regarding subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen, supra*, 80 F.3d at 1281-82 (*citing Cotton v. Bowen*, 799 F.2d 1407-08 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant

1   produces medical evidence of an underlying impairment, the ALJ may not discredit the

2   claimant's testimony as to the severity of symptoms based solely on a lack of objective

3   medical evidence to corroborate fully the alleged severity of pain. *Bunnell v. Sullivan*,

4   947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at

5   1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must

6   provide specific "clear and convincing" reasons for rejecting the claimant's testimony.

7   *Smolen, supra*, 80 F.3d at 1283-84 (*citing Dodrill, supra*, 12 F.3d at 917); *Reddick,*

8   *supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996);

9   *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

10          Here, although plaintiff contends that the ALJ failed to discuss adequately his

11   allegations of pain, as well as the relevant assessments from medical providers regarding

12   his pain, a review of the ALJ's written decision demonstrates that this conention is

13   without merit (*see, e.g.*, Tr. 32 ("the undersigned has considered the claimant's physical

14   impairment of pain syndrome")). The ALJ initiated his discussion of plaintiff's credibility

15   by noting that plaintiff provided testimony, including "back pain" (*see* Tr. 33). The ALJ

16   also included the following in his written decision:

17              In August and September 2009 the claimant was noted to be in no acute
               distress  .  .  .  .  However, the claimant had complaints of abdominal
18              pain, for which he had an x-ray in October 2009 that was normal
               (internal citation to Ex. 5F/107).  .  .  .  .
19
                In September 2010, the claimant reported that his diarrhea and
20              abdominal pain were gone but he still had episodes of nausea and lower
               left quadrant pain. (internal citation to Ex. 5F/69, 79).  He had an upper
21              GI endoscopy that showed only esophagitis with no bleeding and a small
               hiatal hernia (internal citation to Ex. 5F/152). A CT of the chest,
22              abdomen, and pelvis showed multilevel minimal degenerative disc

disease in the mid and lower thoracic spine, lower cervical spine degenerative disc disease, no acute pulponary emphysema, and no acute abdominal or pelvic abnormality (internal citation to Ex. 5F/173). In October, the claimant underwent a gastric emptying study that showed a lag phase of approximately 16 minutes but following this, there was a normal linear rate of gastric emptying. (internal citation to Ex. 5F/97). This study was found to be essentially normal (internal citation to Ex. 9F/6). Dr. Carrougher of Tacoma Digestive Disease Center assessed diverticular disease and constipation and recommended he take a fiber preparation (internal citation to Ex. 9F/7).

(Tr. 34-35).

The cited record demonstrates that the ALJ assessed plaintiff's pain complaints, and found them to be unsupported by the objective medical evidence (*see* Tr. 33-35). The ALJ also noted treatment notes from October, 2010 that "reflected a new complaint of back pain for which he was advised to go to physical therapy and have an x-ray" (Tr. 35). The ALJ indicated that although plaintiff complained of tenderness at this examination, and exhibited paravetrebral muscle spasm, "he had normal flexion, normal lateral flexion, negative straight leg raising, negative elevated leg test, and 5/5 motor" (*id.* (*citing* Ex. 5F/34)).

In addition, the ALJ included the following discussion in his written opinion:

By January, 2010, the claimant reported improved constipation but he also reported that the room was spinning and his appendix area was painful (internal citation to Ex. 9F/4). A physical examination revealed that, inconsistent with the allegations, the claimant was sitting comfortably, his lungs were clear to auscultation bilaterally, and his heart sounds were normal. (internal citation to Ex. 9F/5). While he did have general abdominal tenderness, he had no rigidity or guarding behaviors. Nevertheless, Dr. Carrougher called an ambulance to transport the claimant to the emergency room. In February he returned to Dr. Carrougher at which point, the claimant was noted to be doing well as to his abdominal or left lower quadrant pain. (internal citation to Ex. 14F/2).

(Tr. 35 (duplicate citations omitted)).

Regarding back pain, the ALJ also found a lack of support from the objective medical evidence, including the following discussion:

> [Plaintiff] was noted to have an antalgic gait during observation, but he had a normal gait with distraction. (internal citation to Ex. 12F/7). Regardless, he was noted to walk full weight bearing and without assistance. While he displayed stiffness and difficulty going from a sitting to standing position, he was able to do it and there was no evidence of instability. He reported pain with only light pressure over the paraspinals, midline interspinous ligament region, and piriformis muscles; but no pain was reproduced with gentle percussions over the thoracic and lumbar spinous processes. Lumbar range of motion was abnormal but limited due to the claimant's subjective statements of pain and he had full lower extremity strength. The neurological and vascular examinations were normal. The diagnosis was chronic back pain, chronic fatigue syndrome, and hypertension (internal citation to Ex. 12F/8). The claimant's presentation is somewhat inconsistent with medical findings, which undermines his credibility.

(Tr. 35).

Similarly, the ALJ noted observations from treatment records in October, 2011, such as reports of pain level being the same despite the fact that plaintiff was "not in physical therapy, and he was still not interested in pursuing a third epidural steroid injection" (Tr. 36 (internal citation to Ex. 18F/3)). The ALJ noted that at that "appointment, he was observed to have a normal gait, he was full weight bearing without assistance, he had a steady station, he could go from sitting to standing without difficulties, and he had a normal range of motion in the lower extremities" (*id.*).

The Court concludes that the ALJ's finding that plaintiff's allegations, including his allegations of pain, are not supported by the objective medical evidence, is supported by substantial evidence in the record as a whole, including the record cited herein, and

1  additional discussion by the ALJ not cited herein but supportive of his decision (*see* Tr.

2  34-39). In addition, the Court notes that the ALJ provided other reasons for his

3  determination not to credit fully plaintiff's allegations and testimony, including plaintiff's

4  "conservative and, at times, infrequent, medical treatment record," and his inconsistent

5  reports about his marijuana use (*see* Tr. 37 (*citing* Ex. 18F/1; 5F/30, 8F/6, 12F/5)).

6      Based on the relevant record, and for the reasons stated, the Court concludes that

7  the ALJ provided clear and convincing reasons for failing to credit fully plaintiff's

8  allegations and credibility.

9  **5. Did the ALJ err by failing to include all relevant functional limitations in the**
10  **hypothetical question asked by the ALJ on which the steps 4 and 5 findings**
    **were made.**
11

12      As argued by defendant, most of plaintiff's arguments in support of this final

13  contention repeat arguments made in support of other contentions already addressed.

14  These arguments already have been found unpersuasive.

15      Regarding the ALJ's finding at step four that plaintiff could perform his past

16  relevant work as a guard, plaintiff contends that when "the need to have the ability to sit,

17  stand, or walk every 45 minutes was added, this job would still be available but the

18  occupational base would then be reduced by an estimated 50%" (Opening Brief, ECF No.

19  14, p. 14). However, even if the ALJ erred at step four, he made an alternative finding at

20  step five that plaintiff could perform other work, making any alleged error at step four

21  harmless error.  *See Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111;

22  *Shinseki, supra*, 556 U.S. at 407.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 17

In making his step five determination that plaintiff could perform other work, the ALJ relied on the testimony of a vocational expert ("VE") (*see* Tr. 42). The ALJ presented an initial hypothetical to the VE, that is the same as plaintiff's RFC, with the exception that the RFC contains an additional limitation that allows changing positions between sitting and standing or walking every 45 minutes (*see* Tr. 33, 42). The ALJ's second hypothetical to the VE includes such additional limitations to changing positions, as in plaintiff's RFC (*see* Tr. 106). With such limitation, the VE identified other jobs that plaintiff could perform, including telemarketer, with 288,750 jobs nationally and 6,500 jobs statewide; telephone quotation clerk, with 997,080 jobs in the national economy and 22,140 in the statewide; and storage facility rental clerk, with 414,730 jobs in the national economy and 15,740 statewide (*see* Tr. 42, 107-08).

As admitted by plaintiff, "the remaining jobs that were identified were those in response to the need for a sitting/stand/walk option on a 45 minute internal; however, none of the limitations listed by Dr. Siler, Laurie Steward or Leonard Pruett were mentioned in either hypothetical question," nor "the limitations expressed by the psychiatrist, Dr. Zipperman" (Opening Brief, ECF No. 14, p. 14 (internal citation to Tr. 107-08)).

The Court already had addressed plaintiff's arguments regarding this evidence from Dr. Siler, Laurie Steward, Leonard Pruett and Dr. Zipperman throughout this decision and found them unpersuasive.

For the stated reasons and based on the relevant record, the Court finds no harmful error at step five that plaintiff could perform other work existing in significant numbers.

1

CONCLUSION

2

    Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3

matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

4

    **JUDGMENT** should be for defendant and the case should be closed.

5

Dated this 2nd day of April, 2014.

6

7

8

J. Richard Creatura
United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24